## JONES *et al. vs.* MUNROE.

1. A second amendment of a bill in equity, after adjudications by this Court that neither the original bill nor the first amendment, contained allegations entitling the complainant to relief, will be allowed if meritorious, and if presented to the Court below before final order dismissing the bill.
2. Equity, in a proper case made, will relieve against an agreement of compromise, made under a mistake of law by the party seeking relief.

In Equity, in Lee Superior Court.   Decided by Judge ALLEN, at the September Term, 1860.

George W. C. Munroe filed his bill in equity in Lee Superior Court, against Willis A. Jones, James M. Morris, and James Bond, alleging, in substance, the following facts :

On the second of October, 1838, Abraham Dyson, then sheriff of Lee county, executed a deed of conveyance, as such, to William Howard and William S. Whitehead, for lot of land No. 14, in the second district of said county, pursuant to a sale of the same, by virtue of a *fi. fa.* from a Justice's Court of Habersham county, in favor of Tyre Swift, against Ransom Cain, as the property of the latter. This deed was registered on the 2d of November, 1838.   On the 25th of June, 1840, Elijah Cutts, then sheriff of said county, executed a deed, as such, to William J. Parker, for the undivided half of said land, pursuant to a sale of the same, as the property of William S. Whitehead, under a *fi. fa.*, from a Justice's Court of Stewart county, in favor of William J. Parker against said William S. Whitehead. This deed was recorded on the 30th of March, 1842.   On the 25th of November, 1850, David A. Vason conveyed, by

deed, to Munroe, one undivided half of the land, and, on the 25th of the same month, the said William J. Parker conveyed, by deed, to Munroe, one undivided half of the land. Both of these deeds were recorded on the 7th of January, 1851. Munroe entered into possession of the land under these deeds, cleared about fifty acres of the lot and placed them under cultivation, and also made other valuable improvements thereon, making the land worth twenty-five hundred dollars. Whilst Munroe was thus in the *bona fide* possession of the land, believing that it was his, and holding the same adversely to all the world, James Bond, who was then speculating in lands, came to the house of complainant, and sought information as to various lots of land then vacant in the neighborhood of complainant, which information complainant gave. Bond seemed grateful, and assured complainant that, in return, he would aid complainant in the purchase of any lands that he might want. Complainant then told Bond that he had bought the said lot, No. 14, and had cleared and improved it as aforesaid, and believed he had a good title, but that some of the back deeds were missing, and that, owing to the imperfect index to the records, he was unable to trace the title back to Ransom Cain, the drawer. Some time thereafter, one James M. Morris came to complainant's house, pretending to be the agent of Bond, and that a similar interview occurred between him and complainant, to the one between complainant and Bond.

Morris and Bond searched out the whereabouts of Ransom Cain, and, in fraudulent disregard of their promise to complainant, they bought the land from Cain, taking a deed to Morris. This purchase was for a nominal sum, and Morris made a deed to Bond, in which a larger sum is mentioned, when the land was, in fact, purchased by Morris for Bond, and with his money, and for his sole benefit. Bond employed counsel to bring an action of ejectment, on demises from Cain, and Morris against complainant, to recover said lot of land. No demise from Bond was laid in the writ, because he desired to conceal his ownership of the land, and dodge and evade his obligation to complainant, as before

stated. The action of ejectment is now pending on the appeal in Lee Superior Court. Complainant's counsel advised him, that although he had a regular claim of title from Ransom Cain, the drawer, all of which, as was ascertained, had been regularly and properly recorded, yet, as the land was sold by the sheriff, as the property of Cain, before the grant had issued, the title was doubtful; but that, as Morris bought from Cain whilst complainant held possession of the land adversely, it would be well for complainant to buy the land from Cain, which advice complainant followed, and, on the 25th of January, 1854, obtained a deed from Cain to the land, paying therefor the sum of $250 00. On the trial of the ejectment, the main ground of defence relied on was, that Cain's deed to Morris was void, under the provisions of the statute of the 32d of Henry VIII, which was fully sustained by the presiding Judge in his charge to the jury, and a verdict was rendered in favor of the complainant. The case was carried to the Supreme Court, and the judgment of the Court below reversed by the judgment of a majority of the Judges of the Supreme Court, who decided that the said statute of the 32d of Henry VIII was not of force in Georgia. His Honor Joseph Henry Lumpkin dissented from the judgment of his colleagues, and held that said statute was of force, and if it was not, that the principles of the common law rendered a deed void, executed whilst the land was in the adverse possession of another. The General Assembly, at its session of 1858, passed an Act declaring that the decisions of the Supreme Court, made, or to be made, in which all three of the Judges concurred, or might concur, should not be reversed, overruled, or changed, except by the General Assembly, and that such decisions should be carried out by the Courts, until thus reversed, overruled or changed. Afterwards, complainant sold his settlement of land, including this lot, to Willis A. Jones, for $7,593 50, being $12 50 per acre, and that Jones paid all the purchase money, except for the lot in controversy, for which he gave his note, payable one day after date, with a condition inserted therein, that if the action of ejectment should be decided against

complainant, the note was to be void, and, if otherwise, the note to be paid, with interest from its date. The land is more valuable as a part of the plantation sold to Jones, as aforesaid, than by itself, and will be of comparatively little value to complainant by itself, unless Jones would cancel the trade entirely, and re-convey to complainant the whole settlement. Jones refused to pay the note, and contends that, as the Supreme Court decision was adverse to complainant, the note is void. On the 14th of December, 1858, Messrs. Lanier and Anderson, attorneys for Bond, with a full knowledge of the fact that the Legislature had passed the Act aforesaid, and carefully concealing the same from the complainant, who was ignorant of the fact, represented Bond's title as the only true legal title to the land, and pronounced complainant's title as worthless in law, and told complainant that the case could be then, and then only, compromised, and would give complainant no time to inform himself as to the passage of such an Act. Confiding in the statements and representations of the said Lanier & Anderson, and desiring to save all he could of his hard earnings, expended for and upon said land, the complainant was induced by them to make a most unjust and illiberal compromise of said action of ejectment. The agreement to compromise was reduced to writing by said attorneys of Bond, in which it was stipulated and agreed, that complainant should give Bond his promissory note for $2,000 00, due one day after date, with interest from the first of January, 1858, and also deliver up to said attorneys, as collateral security, the note of Jones aforesaid, which was for $2,500 00, and that Bond should execute to complainant a quit claim deed for the land. It was further stipulated, in said agreement, that the note given by complainant should be paid out of the proceeds of the note on Jones, and the balance paid over to complainant, and that if said attorneys should have to sue the note on Jones, they were to retain five per cent. on the surplus, after paying of the note given by complainant to Bond. Under the agreement, complainant was to take a verdict in the action of ejectment, and Bond was to deliver up to him the deeds from

Jones *el al., vs.* Munroe.

Cain to Morris, and from Morris to Bond.   So soon as complainant found out that he had been entrapped and duped into said compromise, and had ascertained that the Legislature of Georgia had passed the Act aforesaid, he forthwith repudiated the compromise, and demanded that the agreement should be cancelled and delivered up, which was refused by the said Bond and his attorneys.   Complainant has reason to fear that Bond will collude with Jones, and induce him to pay. said note, or that he will transfer the notes on Jones and complainant, and thus involve complainant in a complex law-suit, or law-suits, and increase the difficulties in the way of his obtainment of his just rights in the premises.   Complainant has learned that Jones is desirous of getting clear of his obligations to take and pay for said lot of land, and that Bond is anxious to own the same, and he fears that Bond may agree with Jones to cancel said note, and for Jones to convey the land to Bond, and thus jeopard complainant's right.   Complainant tenders back the agreement to compromise, and declines taking Bond's quit claim deed, and also declines any other benefit under said agreement, and insists that the agreement be canceled, and the parties remitted to all their rights, as if it had never been made.

The bill prays a discovery; and that the ejectment be enjoined, and that Bond be enjoined from transferring the notes on Jones and complainant; and that Jones be enjoined from paying his note to Bond, or any one else, until the bill is heard; and for general relief.

The bill was filed 31st December, 1858, and the injunction issued as prayed for in the bill.

Bond and Morris both answered the bill, denying any agreement to aid complainant in perfecting his title to the land, and insists that their title is good.

Messrs. Lanier & Anderson, and Ebenezer C. Grier, each file affidavits, detailing the circumstances attending the agreement to compromise, and negativing the averments in the bill of unfairness in bringing about the compromise, and denying any knowledge that the Legislature had passed the Act referred to in the bill.   At the March Term, 1859, counsel

for defendants made a motion to dissolve the injunction, and to dismiss the bill, for want of equity. The presiding Judge overruled the motion, and ordered the cause to proceed.

This decision was excepted to by the defendants, and carried to the Supreme Court, and, at the July Term, 1859, of said Supreme Court, the decision of the Court below was reversed, on the ground that this case, having arisen before the passage of the Act of 1858, referred to in the bill, was a case to which said Act did not apply.

Before this judgment of the Supreme Court was made the judgment of the Court below, counsel for complainant, by leave of the Court, amended his original bill, by alleging:

That he was induced to make the agreement to compromise, mentioned in the original bill, by the assurances given him by Messrs. Lanier & Anderson, and Ebenezer C. Grier, a skillful lawyer, that the deed from Cain to Morris was not void because of complainant's adverse possession of the land at the time it was made, but that said deed was valid, and constituted a title paramount to that of complainant; that, since the filing of this bill, he has heard, and believes it true, that the Supreme Court of Georgia, at its recent sitting in Atlanta, in a case of Edward Grisham against William C. Webb, has decided that, according to the principles of the common law, adopted by statute, and of force in Georgia, a deed made to land, whilst the same is held adversely by a third person, is void, and confers no title; that, having been deceived, misled, and mistaken as to his legal rights, and the law governing this case, he insists that said agreement should be set aside, and the parties restored to their former position and rights.

At the September Term, 1859, this amendment was allowed, and an order passed retaining the injunction.

This decision was likewise excepted to, carried to the Supreme Court, and reversed.

At the September Term, 1860, when it was proposed, by defendants' counsel, to enter the judgment of the Supreme Court as the judgment of said Superior Court, and to dis-

miss said bill, the complainant, before the motion was made and decided, again amended his bill, by alleging:

That he has heard, and believes it true, that the judgment of this Court was reversed the last time by the Supreme Court, on the ground that it was not alleged, either in the original bill of complainant, or in the amendment thereto, that complainant believed, at the time he made and entered into the agreement with Messrs. Lanier & Anderson to compromise said action of ejectment, that the decision of the Supreme Court, in the case of Cain and Morris, was the law of Georgia; that it was his intention so to allege, and that he did believe that such was the law; that Messrs. Lanier & Anderson not only gave him that assurance, but, out of abundant caution, he consulted Mr. Grier, of the law firm of Poe & Grier, of the city of Macon, a lawyer of learning and ability, and was assured by him, after laying all the facts before him, that the decision in the case of Cain and Morris was the law, and the deed from Cain to Morris for the land in dispute was not void, although the complainant was in the adverse occupation of the land at the time it was executed, but that said deed was valid and paramount to complainant's title; that complainant believed and confided in these assurances as true, and as indicating the law governing his case, and, under this belief and assurance, he made said agreement; that the agreement was thus made under a mistake, and an honest misapprehension of his legal rights, and by which he was induced to compromise the case, because he honestly believed that, according to the laws of Georgia, his title was inferior to that of the defendants in this bill, on account of the adjudication of the Supreme Court in said case of Cain and Morris.

This amendment was allowed by the presiding Judge, and an order passed retaining the injunction until a further hearing. This decision is the error now complained of.

LANIER & ANDERSON and McCAY & HAWKINS for plaintiffs in error.

VASON & DAVIS for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The law regulating the practice in Courts of original jurisdiction, in Georgia, allows amendments of the pleadings at any stage of the proceeding. Notwithstanding, therefore, the defendant in error (complainant below) failed both in his original bill, and in his first attempt at amendment, to make a case entitling him to relief in equity, if his last amendment of his bill, (which was presented before the final order of the Court below dismissing his bill), contains averments entitling him to relief, he must be heard upon the merits.

Having carefully examined the last amendment, we think it does clearly allege that the agreement, the cancellation of which is the relief sought, was entered into under a mistake of law, on his part, the facts being well understood.

The rule of law concerning which the mistake is alleged to have been made, and upon which the title of the defendant in error rested, is this, " *a conveyance of land by one against whom the land conveyed is held adversely, by claim of title, is void.*" Taking this to be the rule of law, the title of defendant in error was good. Under the impression that the rule was otherwise, defendant in error compromised his title, and it is this compromise which he, by his bill, seeks to set aside. Is that the rule of law in Georgia? In Harris vs. Cannon *et al.*, 6 *Ga. R.*, 382, and in Harrison vs. Adcock *et al.*, 8 *Ga. R.*, 68, this Court unanimously affirmed the rule.

In Cain & Morris vs. Monroe, (involving the very title which defendant compromised subsequently,) a majority of the Court disaffirmed the rule, Judge Lumpkin, in a dissenting opinion, adhering to the previous rulings. In Gresham vs. Webb *et al.*, 29 *Ga. R.*, 320, a majority of the Court overruled Cain vs. Morris *et al.*, and reaffirmed the rule established in the earlier cases—Judge Benning dissenting.

By the Act of 1858, the Legislature provided, imperatively, that the decisions of this Court, made, or to be made, in which all three of the Judges concurred, or may concur, shall not be reversed, overruled, or changed, except by the

Jones *et al.*, *vs.* Munroe.

General Assembly, and that such decisions shall be carried into effect by the Courts, until thus reversed, overruled, or changed.

In the first place, then, the cases of Cain & Morris vs. Munroe, and of Gresham vs. Webb *et al.*, being adverse the one to the other, and neither made by a concurrence of all the Judges may, and should, be put out of the question. In the next place, the cases of Harris vs. Cannon *et al.*, and Harrison vs. Adcock *et al.*, both of which emanated from a full bench, all of the Judges concurring, must, under the Act of 1858, be now regarded by this Court as declarations of the law. In this view, the last amendment of defendant in error to his bill, sufficiently avers, that the agreement of compromise with Bond, was made by him under a mistake of law. In such cases, relief will be granted by a court of equity. 1 Story's Eq. Jur., sec. 121 *et seq.* to 132. This was no family compromise. It was no compromise under the impression that the law was doubtful or uncertain, made with a view of bringing peace. It was under an entire and thorough mistake of law.

We go no further, however, than to decide, that the averment in the bill, as amended, regarding this mistake, is sufficient to entitle the complainant to a hearing on the merits, and we consider it only as affecting the validity of the agreement of compromise between Munroe and Bond. How far the rights of the parties in the action at law of Cain & Morris vs. Munroe (still pending) may have been affected by the judgment of this Court, in that particular case, we leave as an open question, until presented for our adjudication. We affirm the judgment of the Court below, allowing the amendment and retaining the case.

Judgment affirmed.